UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CINDY LEE TULLY,                    )
                                    )    No. CV-11-00396-CI
        Plaintiff,                  )
                                    )    ORDER GRANTING PLAINTIFF'S
v.                                  )    MOTION FOR SUMMARY JUDGMENT
                                    )    AND REMANDING FOR IMMEDIATE
CAROLYN W. COLVIN, Commissioner     )    AWARD OF BENEFITS
of Social Security,[1]              )
                                    )
        Defendant.                  )
                                    )
                                    )
_____    )

    BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 13, 19. Attorney Kenneth Isserlis represents Cindy Lee Tully (Plaintiff); Special Assistant United States Michael S. Howard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for an award of immediate benefits.

**JURISDICTION**

    On March 17, 2008, Plaintiff protectively filed an application for supplemental security income insurance benefits, alleging disability beginning May 5, 2006. Tr. 35; 411. In her application

_____

    [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit.  42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

for benefits, Plaintiff reported that she stopped working due to sleep and connective tissue disorders, Sjorgren's Disease, Fibromyalgia, Reynalds Disease, depression and Carpel Tunnel Syndrome. Tr. 414.

Plaintiff's case has a complicated procedural history. Her claim was initially denied, and denied again on reconsideration. Tr. 213-16; 221-22. Plaintiff requested an administrative hearing. Tr. 223-24.

On November 17, 2009, ALJ Paul Hebda conducted a hearing. Tr. 121. Judge Hebda issued a partially favorable decision on December 31, 2009. Tr. 178-97. The decision found Plaintiff was disabled, but ruled her disability began on November 10, 2008, instead of May 5, 2006, as Plaintiff alleged. Tr. 183-97. ALJ Hebda found Plaintiff's Residual Functional Capacity ("RFC") included light work prior to November 10, 2008, but after that date, Plaintiff had the additional limitations: "a low stress job with a sit/stand option at one hour intervals; only occasional bilateral fine manipulations; only an occasional change in the claimant's work setting; and, only an occasional interaction with co-workers with no tandem tasks." Tr. 192. The Vocational Expert testified that the added limitations meant that after November 10, 2008, Plaintiff could not perform her past relevant work and no jobs in significant numbers existed in the national economy that Plaintiff could perform. Tr. 196. Plaintiff sought review of ALJ Hebda's determination of her disability onset date with the Appeals Council.[2]  Tr. 262-306.

---

[2]Plaintiff stated in her request for review, "Please note Ms. Tully is not appealing and does not seek review of the any kind of

1    The Appeals Council granted the request for review, vacated the
2  decision and remanded for an additional hearing.   Tr. 204.   The
3  Appeals Council concluded that the vocational expert's testimony was
4  inconsistent  with  the  Dictionary  of  Occupational  Titles,
5  specifically whether Plaintiff could perform the job of surveillance
6  system monitor.   Tr. 205.   The Council also found no substantial
7  evidence supported the portion of the RFC that limited Plaintiff to
8  occasional bilateral fine manipulation.   Tr. 205-06.   As a result,
9  the Council remanded with instructions to the ALJ to update the
10 treatment evidence related to Plaintiff's "medical condition,"
11 obtain evidence from a medical expert to clarify the nature and
12 severity of Plaintiff's impairments, reconsider Plaintiff's RFC
13 based upon the new evidence, consider if Plaintiff could perform
14 past relevant work, and obtain supplemental evidence from a
15 vocational expert.   Tr. 206.

16    The second administrative hearing was held on December 21,
17 2010, in front of ALJ Caroline Siderius.   Tr. 67.   At that hearing,
18 ALJ Siderius noted the Appeals Council vacated the first opinion,
19 and the ALJ declared the administrative hearing was a *de novo*
20 hearing.   Tr. 74.   During the hearing, the testifying witnesses were
21 medical expert Daniel Weisman, M.D., vocational expert Thomas
22 Polsin, Plaintiff's husband Sean Tully, and Plaintiff, who was
23 represented by counsel.   Tr. 67-46.   On January 14, 2011, ALJ
24 Siderius found Plaintiff was not disabled and denied benefits.   Tr.
25 35-49.   Plaintiff sought review with the Appeals Council and was
26 denied.   Tr. 19-21.   Plaintiff moved to re-open the Appeals Council

27 _____

28 the favorable portion of this Decision."   Tr. 260.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

decision and the Council denied that motion.  Tr. 1; 467-540.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the second administrative hearing, Plaintiff was 46 years old, and living in a house with her husband.  Tr. 89; 91.  Plaintiff worked as a dental hygienist beginning in 1990.  Tr. 391.

In 1995, Plaintiff was involved in a car accident, and some time after that she began experiencing significant pain and fatigue. Tr. 689.  She testified that she had to nap at lunch breaks and at the end of each workday.  Tr. 89.  Plaintiff reported she was depressed, and she cried everyday.  Tr. 91.  Plaintiff's employer attempted to accommodate her needs by giving her longer lunch breaks, a day off between workdays, and a special chair, but eventually, in 2006, she could no longer tolerate work.  Tr. 92-93. The day after Plaintiff worked, she was in bed most of the day, recovering.  Tr. 93.  Plaintiff testified that pain and fatigue prevent her from working, and at times, maintaining housework and getting dressed are overwhelming tasks.  Tr. 95-96.  Plaintiff testified that in the mornings, she has to wait for her pain medication to take effect before she can begin housework, but she has to work "in waves," and she rests in between tasks.  Tr. 97.

Plaintiff also testified that currently, her hands swell, go numb, burn, become painful, and her fingers split on the tips.  Tr. 101.  Plaintiff estimated about three times per month she has headaches that awaken her, and that are affected by light and noise. Tr. 102.  She said her eyesight blurs within 15 to 20 minutes after

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1   she starts reading.  Tr. 101-02.

2       Plaintiff testified that her daily activities are minimal.  She

3   spends five to six hours per day resting or napping.  Tr. 100.

4   Plaintiff's husband stated that his wife used to run three miles

5   three days per week, bike twice per week, ski, scuba dive and travel

6   internationally and locally to visit her parents in Wenatchee.  Tr.

7   18.  He stated that now Plaintiff is in constant pain and cannot

8   stand, sit or walk for any length of time, and while some days are

9   better than others, none are without pain.  Tr. 18.

10                      **ADMINISTRATIVE DECISION**

11       At step one, ALJ Siderius found Plaintiff had not engaged in

12  substantial gainful activity since May 5, 2006, the application

13  date.  Tr. 37.  At step two, she found Plaintiff had the following

14  severe impairments: fibromyalgia, Sjogren's Syndrome; Reynaud's

15  Disease and depression.  Tr. 37.  At step three, the ALJ determined

16  Plaintiff's impairments, alone and in combination, did not meet or

17  medically equal one of the listed impairments in 20 C.F.R., Subpart

18  P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  Tr.

19  38.  The ALJ found Plaintiff has the Residual Functional Capacity

20  ("RFC") to perform sedentary work except that Plaintiff:

21          [C]ould lift/carry up to 20 pounds occasionally and 10
            pounds frequently.  She is able to stand/walk for 2 hours
22          per 8-hour workday and she can sit for 6 hours per 8-hour
            workday.  She would need to change positions approximately
23          once per hour.  She could occasionally climb stairs and
            ramps.  She would be unable to climb ladders, ropes and
24          scaffolds.  She could occasionally stoop, kneel and crawl.
            She could not be exposed to unprotected heights or
25          machinery.  She would need to be in a low stress job with
            no more than normal production requirements.  She can have
26          occasional changes in the work setting.  She can have
            occasional contact with the general public.

27

28  Tr. 39.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1      In her step four findings, the ALJ found Plaintiff's statements
2  regarding pain and limitations were not credible to the extent they
3  were inconsistent with the RFC findings.  Tr. 40.  The ALJ found
4  that Plaintiff could not perform her past relevant work, but after
5  considering Plaintiff's age, education, work experience, and
6  residual functional capacity, jobs exist in significant numbers in
7  the national economy that the Plaintiff can perform, such as small
8  parts assembler, photo copy machine operator, and courier.  Tr. 37;
9  48.

10                        **STANDARD OF REVIEW**

11     In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the
12  court set out the standard of review:

13         A district court's order upholding the Commissioner's
       denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
14     211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
       Commissioner may be reversed only if it is not supported
15     by substantial evidence or if it is based on legal error.
       *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
16     Substantial evidence is defined as being more than a mere
       scintilla, but less than a preponderance.  *Id*. at 1098.
17     Put another way, substantial evidence is such relevant
       evidence as a reasonable mind might accept as adequate to
18     support a conclusion.  *Richardson v. Perales*, 402 U.S.
       389, 401 (1971).  If the evidence is susceptible to more
19     than one rational interpretation, the court may not
       substitute its judgment for that of the Commissioner.
20     *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
       Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
21
           The ALJ is responsible for determining credibility,
22     resolving conflicts in medical testimony, and resolving
       ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
23     Cir. 1995).  The ALJ's determinations of law are reviewed
       *de novo*, although deference is owed to a reasonable
24     construction of the applicable statutes.  *McNatt v. Apfel*,
       201 F.3d 1084, 1087 (9th Cir. 2000).
25
       It is the role of the trier of fact, not this court, to resolve
26  conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence
27  supports more than one rational interpretation, the court may not
28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 6

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§

1  404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

2                                **ISSUES**

3      Plaintiff contends the ALJ erred by discrediting Plaintiff's

4  testimony, and in improperly evaluating the medical opinions.  ECF

5  No. 14 at 19-28.  The Defendant argues that the court should not

6  consider Plaintiff's new evidence submitted to the Appeals Council

7  because Plaintiff failed to establish "good cause."  ECF No. 20 at

8  12.

9  **A.   New Evidence Submitted to the Appeals Council**

10     Defendant contends that this court "should decline to remand on

11  the basis of Plaintiff's new evidence, submitted to the Appeals

12  Council, after the ALJ's decision."  ECF No. 20 at 12.  Defendant

13  argues that the Plaintiff has failed to show "good cause" for the

14  late submission, and that even if good cause exists, the evidence is

15  not likely to change the outcome of the administrative hearing.  ECF

16  No. 20 at 12-19.

17     When the Appeals Council considers new evidence in deciding

18  whether to review a decision of the ALJ, that evidence becomes part

19  of the administrative record, which the district court must consider

20  when reviewing the Commissioner's final decision for substantial

21  evidence.  *Brewes v. Comm'r Of SSA*, 682 F.3d 1157, 1162 (9th Cir.

22  2012); see *Tackett*, 180 F.3d at 1097-98 (holding that a court

23  reviewing the Commissioner's decision must consider the record as a

24  whole).  Claimants need not show "good cause" before submitting new

25  evidence to the Appeals Council.  *Brewes*, 682 F.3d at 1162; see also

26  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).  As a result,

27  Defendant's contention that this court should decline to review the

28  evidence submitted to the Appeals Council fails.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

**B.   Credibility**

     For the ALJ to reject the claimant's complaints, she must provide "specific, cogent reasons for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990), *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995).[3] Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell,* 947 F.2d at 343; *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless affirmative evidence exists establishing that the claimant is malingering, the Commissioner's

_____

     [3]Defendant argues that in determining credibility, the court must employ the standard articulated in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991), that merely requires an ALJ's credibility findings are supported by the record, and sufficiently specific to establish the ALJ did not "arbitrarily discredit a claimant's testimony regarding pain." *Bunnell,* 947 F.2d at 345-46. Defendant contends that the subsequent decisions employing the "clear and convincing" standard have no precedential value because they were not *en banc* decisions. ECF No. 20 at 20. The court is not persuaded to disregard the plethora of Ninth Circuit cases that employ the standard articulated in *Lester. See, e.g., Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir. 2007); *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).

reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). Moreover, general findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988). In the present case, the ALJ relied upon several factors in determining that Plaintiff's testimony about the intensity of her symptoms was not credible, and each factor will be addressed separately.

**1.   Objective Evidence and Fibromyalgia**

While the ALJ cited several factors that she believed undermined Plaintiff's credibility, a common factor in several findings was a lack of objective medical findings to support Plaintiff's symptoms:

> "First, any limitations she described at the hearings and in her application could not be objectively verified with any reasonable degree of certainty *with objective medical facts or diagnostic testing*. Secondly, if she was as limited as alleged, it is difficult to attribute that degree of limitation to Plaintiff's medical condition, as opposed to other reasons *in view of the relatively weak objective medical evidence*....Third, a claimant's symptom or combination of symptoms alone cannot be the basis for a finding of an impairment *without medical signs and/or laboratory findings demonstrating the existence of the physical or mental impairment.*

Tr. 40 (emphasis added).

As noted above, after a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony merely because the claimant's allegations of pain and symptoms are unsupported by objective evidence. *Bunnell,* 947 F.2d at 343; *Cotton,* 799 F.2d at 1407 (9th Cir. 1986) ("it is improper as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings").

In this case, the ALJ impermissibly discounted Plaintiff's testimony largely because the record lacks of objective evidence, or medical "signs and/or laboratory findings." Tr. 40. This reasoning not only runs afoul of *Bunnell* and its progeny, the reasoning evidences an apparent misunderstanding of the nature of fibromyalgia, and this misunderstanding permeates the opinion.[4]

It is well-established in the Ninth Circuit that the condition of fibromyalgia can be disabling. *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004). In *Benecke*, the Ninth Circuit described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation

---

[4]The ALJ was not alone in her misunderstanding of the nature of fibromyalgia. Daniel Weisman, M.D., a pediatrician (Tr. 339-43), who served as the testifying medical expert at Plaintiff's first hearing, opined fibromyalgia is not a medical diagnosis:

> Fibromyalgia is the problematic diagnosis. I think it was invented in order for Courts to have something to do because it is a set of complaints, without any objective findings, that has been clustered into a thing that looks like a medical diagnosis, but I have always held the contention that it isn't.

Tr. 78. "Well, unfortunately, this disease does not have any objective evidence by definition. And I think I mentioned earlier, so I'll say it again, this disease looks like it was invented in order to confound the process that we're in, in this Court." Tr. 85.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common sympoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

*Id.* (internal citations omitted); *see also Harman*, 211 F.3d at 1172 (reversing ALJ decision denying benefits for fibromyalgia); *Bunnell*, 947 F.2d 341 (upholding benefits for fibrositis, now known as fibromyalgia).

The Social Security Administration issued a ruling, effective July 25, 2012, to assist factfinders in the evaluation of fibromyalgia. Social Security Ruling ("SSR") 12-2p. SSR 12-2p provides that once a person is determined to have fibromyalgia her statements about symptoms and functional limitations are to be evaluated according to the two-step process set forth in SSR 96-7p. These policies provide that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all other evidence in the case record." SSR 12-2P.

The accepted diagnostic test is that Plaintiff must have pain in 11 of 18 tender points. *Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 877 (9th Cir. 2003); *see also Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (11 of 18 tender points). Objective tests such as myelograms are administered to rule out other diseases and alternative explanations for the pain but do not establish the presence or absence of fibromyalgia. *Jordan*, 370 F.3d at 873, 877.

1  fibromyalgia cannot be "objectively" proved. *Id.* at 877.  The

2  symptoms can be worse at some times than others.  *Id.* at 873.  The

3  Ninth Circuit recognizes fibromyalgia as a physical rather than a

4  mental disease.  *Id.*

5      In this case, Plaintiff's fibromyalgia was undisputed.

6  Plaintiff's two treating rheumatologists and the other medical

7  professionals who treated or examined Plaintiff acknowledged she had

8  fibromyalgia.  Tr. 548, 598 (Dr. Stevenson); 694 (Dr. Djergaian);

9  728-34 (Dr. Lammers); 870 (Dr. Mueller); 872 (Dr. Elmer).  The ALJ

10  determined that Plaintiff's severe impairments included

11  fibromyalgia.  Tr. 37.  In this case, the ALJ's determination that

12  Plaintiff was not credible because the record lacked "objective

13  findings" to support her fibromyalgia related disabling pain was

14  legal error.

15      **2.   Control of Symptoms**

16      Additionally, the ALJ discounted Plaintiff's credibility

17  because the ALJ concluded "the record revealed the treatment has

18  been generally successful in controlling those symptoms."  Tr. 40.

19  A favorable response to conservative treatment may undermine a

20  claimant's reports of the disabling nature of his or her pain.

21  *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008).

22      In this case, the record does not support the ALJ's assertion.

23  Instead, the overwhelming evidence in the record reveals that

24  despite regularly taking multiple medications, Plaintiff constantly

25  struggles with good days where she can accomplish a few tasks, and

26  bad days, where she can do very little, consistent with the

27  experience of many fibromyalgia sufferers.  See Tr. 541; 548; 554;

28  558; 608; 626; 690; 730; 734.  The ALJ's reason for discounting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

1  Plaintiff's credibility because medication controlled her symptoms

2  was not supported by the record.

3      **3.   Daily Activities**

4      Finally, the ALJ intimated that Plaintiff's daily activities

5  contradicted her claimed limitations. Tr. 40-41. The ALJ commented

6  that the record reveals Plaintiff as "happy doing lots of yard work,

7  had good energy and was very active with her pets in May 2006." Tr.

8  40-41.

9      Disability claimants should not be penalized for attempting to

10 lead normal lives in the face of their limitations. *Reddick v.*

11 *Chater,* 157 F.3d 715, 722 (9th Cir. 1998). The mere fact that a

12 claimant engages in normal daily activities "does not in any way

13 detract from her credibility as to her overall disability. One does

14 not need to be 'utterly incapacitated' in order to be disabled."

15 *Vertigan*, 260 F.3d at 1050. "The Social Security Act does not

16 require that claimants be utterly incapacitated to be eligible for

17 benefits .. and many home activities are not easily transferrable to

18 what may be the more grueling environment of the workplace where it

19 might be impossible to periodically rest or take medication." *Fair*

20 *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Accordingly, the

21 Ninth Circuit has "repeatedly asserted that the mere fact that a

22 plaintiff has carried on certain daily activities, such as grocery

23 shopping, driving a car, or limited walking for exercise, does not

24 in any way detract from her credibility as to her overall

25 disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

26 2001).

27     Rather, "[i]t is only where the level of activity is

28 inconsistent with a claimed limitation that the activity has any

bearing on credibility." *Id.* (citing *Reddick,* 157 F.3d at 722).
Daily activities, therefore "may be grounds for an adverse
credibility finding if a claimant is able to spend a substantial
part of h[er] day engaged in pursuits involving the performance of
physical functions that are transferable to a work setting." *Orn,*
495 F.3d at 639 (citations and internal quotation marks omitted).
To conclude that a claimant's daily activities warrant an adverse
credibility determination, the ALJ must make specific findings
relating to the daily activities and the transferability of those
activities to the workplace. *Id*.

In this case, the ALJ failed to make specific findings relating
to Plaintiff's activities as applicable to workplace activities.
First, as described, Plaintiff's activities do not contradict her
other testimony or assertions. See *Fair*, 885 F.2d at 603. Second,
Plaintiff's activities do not meet the threshold for transferable
work skills, the second ground for using daily activities in
credibility determinations. *Id.*

Plaintiff testified that she has pain in her whole body, and
every morning, she has to wait several hours for her pain medication
to take effect before she can do much of anything. Tr. 96-97.
Plaintiff testified that after she has rested and the medications
take effect, she starts trying to do some housework, but she needs
to "work in waves" and sit down and rest periodically between tasks.
Tr. 97-98. She testified that she buys all her clothing at Costco
because "it's just too much effort" to go anywhere else. Tr. 98.

The ALJ relied upon a single entry from a May 31, 2006,
appointment with Deborah Smith, ARNP, when the nurse noted Plaintiff
"was happy doing lots of yard work, had good energy and was very

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

active with her pets in May 2006." Tr. 40-41; 554. The single entry is not indicative of Plaintiff's condition, which can be best gleaned from a longitudinal review of the record. *See, e.g.*, Tr. 548; 608; 621-22; 689-96; 723; 729-32; 769; 817. The fact that during some doctor visits Plaintiff reported that her pain had temporarily improved, does not establish Plaintiff retained the ability to work. Fibromyalgia is an elusive diagnosis, "[i]ts cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (9th Cir. 1996). Plaintiff's "subjective" complaints correspond directly with the disorder's characteristics: "chronic widespread aching and stiffness, involving particularly the neck, shoulders, back, and hips, which is aggravated by the use of the affected muscles." Stedman's Medical Dictionary 725 (28th ed. 2006).

Plainly, the ALJ's findings regarding Plaintiff's daily activities were minimal and she failed to conduct the necessary transferability analysis. Thus, the court agrees with Plaintiff that the foregoing is not sufficient justification for the adverse credibility finding.

## C. Medical Opinions

Plaintiff contends that the ALJ improperly rejected treating and examining physicians testimony in favor of non-examining physician opinions. ECF No. 14 at 23. The ALJ apparently rejected the opinion of Plaintiff's treating physicians in favor of the opinions from non-examining physician Norman Staley, M.D., Howard Platter, M.D., who reviewed Dr. Staley's conclusion, and Arthur Brovender, a retired orthopedist who testified at Plaintiff's first

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

1 │ administrative hearing.  Tr. 41-43.

2 │ **1.   Jon T. Stevenson, M.D.**

3 │ Dr. Stevenson, who began treating Plaintiff in 1997, is an
4 │ internist who specializes in rheumatology.   Tr. 598.   The ALJ
5 │ provided three reasons for rejecting Dr. Stevenson's opinions: (1)
6 │ his conclusions were "primarily based upon the subjective reports of
7 │ the claimant;" (2) he was not objective because he was sympathetic
8 │ to Plaintiff's claim; and (3) his opinions were contradicted by the
9 │ nonexamining physicians opinions.   Tr. 42-43; 45.   Under the
10 │ circumstances present in this case, all three reasons provided by
11 │ the ALJ for discounting Dr. Stevenson's opinion are improper.

12 │ **a.   Subjective reports from Plaintiff**

13 │ The ALJ discounted treating physician Dr. Stevenson because his
14 │ assessments were primarily based upon the subjective reports of
15 │ Plaintiff.   Generally, an ALJ need not accept the opinion of any
16 │ physician, including a treating physician, if that opinion is brief,
17 │ conclusory, and inadequately supported by clinical findings. *Thomas*
18 │ *v. Barnhart*, at 957.   However, in this case, the ALJ's reliance upon
19 │ this factor evidences her misunderstanding of fibromyalgia:   "[A]
20 │ patient's report of complaints, or history, is an essential
21 │ diagnostic tool" in fibromyalgia cases, and a treating physician's
22 │ reliance on such complaints "hardly undermines his opinion as to
23 │ [the claimant's] functional limitations." *Green-Younger v. Barnhart*,
24 │ 335 F.3d 99, 107 (2d Cir. 2003) (internal punctuation and citation
25 │ omitted).   The federal courts have recognized that fibromyalgia
26 │ "often lacks medical or laboratory signs, and is generally diagnosed
27 │ mostly on an individual's described symptoms," and that the
28 │ "hallmark" of fibromyalgia is therefore "a lack of objective

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1   evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005);

2   *Benecke*, 379 F.3d at 594(concluding the ALJ erred by "effectively

3   requiring objective evidence for a disease that eludes such

4   measurement"); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234,

5   243 (6th Cir. 2007) (stating that "fibromyalgia patients present no

6   objectively alarming signs"); *Green-Younger*, 335 F.3d at 108;

7   *Sarchet,* 78 F.3d at 306.  The lack of objective clinical findings in

8   this case of fibromyalgia is insufficient to support the ALJ's

9   rejection of Dr. Stevenson's opinions regarding Plaintiff's

10  functional capacity.

11              **b.   Lack of objectivity of treating physician**

12       Second, the ALJ noted that Dr. Staley's findings and Dr.

13  Stevenson's findings were quite similar,[5] and the difference between

14  the doctors' conclusions was likely attributable to Dr. Stevenson's

15  lack of objectivity based upon his sympathy for Plaintiff:

16       Yet, Dr. Staley noted the examiner knew the claimant for
         ten years and "totally supports her claimant [sic] for
17       disability."  The undersigned notes the conflict in the
         ultimate conclusion between similar findings from the
18       claimant's examiners and Dr. Staley.  If both physician[s]
         have the same facts but come up with very different
19       conclusions, like Dr. Staley, the undersigned notes there
         is a possibility a doctor may express an opinion in an
20       effort to assist a patient with whom he or she sympathizes
         for one reason or another.  While it is difficult to
21       confirm the presence of said motives, they are more likely
         in situations where the opinion in question departs
22       substantially from the rest of the evidence in the record,
         as in the current case.

23

24  _____

25       [5]The ALJ relies upon the check-the-box form question: "are

26  there treating/examining source conclusions about the claimant's

27  limitations or restrictions which are significantly different from

28  your findings?"  Dr. Staley checked the "no" box.  Tr. 683.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

1  Tr. 42-43.

2      The ALJ points to no evidence of actual impropriety on the part
3  of Dr. Stevenson.  See *Lester*, 81 F.3d at 832 (quoting *Ratto v.*
4  *Sec'y, Dept. of Health and Human Servs.*, 839 F. Supp. 1415, 1426 (9th
5  Cir. 1993)) ("The Secretary may not assume that doctors routinely
6  lie in order to help their patients collect disability benefits.");
7  *see, also, Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)
8  (citing *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996)(1997))
9  (the source of report is a factor that justifies rejection only if
10 there is evidence of actual impropriety or no medical basis for
11 opinion).  In this case, the record contains no evidence that Dr.
12 Stevenson embellished his assessments of Plaintiff's limitations to
13 assist her with her benefits claim.  See *Reddick*, 157 F.3d at 25-26
14 (ALJ erred in assuming that the treating physician's opinion was
15 less credible because his job was to be supportive of the patient).
16 Thus, the ALJ's rejection of Dr. Stevenson's opinion on the basis
17 that his opinion was based upon sympathy instead of sound medical
18 judgment was improper.

19      c.  **Contradictory opinions from non-examining physicians**
20      Finally, the ALJ rejected the opinion of Dr. Stevenson because
21 it was contradicted by the non-examining physicians who reviewed the
22 case, including Drs. Staley, Platter, Brovender and Weisman.  Tr.
23 43-44.  In social security cases, more weight should be given to
24 the opinion of a treating source than to the opinion of doctors who
25 do not treat the claimant.  *Lester,* 81 F.3d at 830.  Where the
26 treating doctor's opinion is not contradicted by another doctor, it
27 may be rejected only for "clear and convincing" reasons.  *Id.*
28 "Clear and convincing" reasons are also required to reject the

treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831. A nonexamining doctor's opinion, with nothing more, does not constitute substantial evidence. *Lester*, 81 F.3d at 831. An ALJ may reject the testimony of an examining physician, in favor of a nonexamining physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *See, Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)(upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results).

In this case, the ALJ gave significant weight to the opinions of the nonexamining medical expert who testified at Plaintiff's first 2009 administrative hearing, Arthur Brovender, M.D. Tr. 43. The ALJ relied upon Dr. Brovender's testimony that agreed with Dr. Staley's opinions. Tr. 43. The ALJ indicated she gave Dr. Brovender's testimony significant weight, "due to his expertise, his familiarity with the Social Security regulations and the consistence of his testimony with the longitudinal medical history, objective medical findings and other treating and examining opinions contained in the record." Tr. 43. An ALJ is encouraged to "give more weight

to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). The record reveals Dr. Brovender was a retired physician who specialized in orthopedics. Tr. 140. Dr. Brovender acknowledged he did not assess any of Plaintiff's impairments or conditions unrelated to orthopedics, and he admitted when he was a practicing orthopedist, if a patient presented with symptoms of fibromyalgia, he referred the patient to a rheumatologist. Tr. 140. Similarly, Dr. Weisman was a pediatrician, whose testimony illustrated his lack of understanding about the nature of fibromyalgia. Tr. 78; 85; 339-43.

In this case, it was error for the ALJ to give more weight to the testimony of a non-examining orthopedist than to Plaintiff's treating rheumatologist with regard to the severity of Plaintiff's impairments caused by fibromyalgia.

Moreover, the nonexamining physicians in this case provided conclusions about Plaintiff's level of impairment that contradicted Plaintiff's treating physicians. A treating physician's opinion regarding a claimant's residual functional capacity is generally due controlling weight in the determination of that issue. See 20 C.F.R. § 404.1527(d)(2). Plaintiff's treating physicians, including Dr. Stevenson, all disagreed with the nonexamining physicians' conclusions about Plaintiff's impairments and the RFC. Tr. 548 and 598 (Dr. Stevenson); 694 (Dr. Djergaian); 728-34 (Dr. Lammers); 870 (Dr. Mueller); 872 (Dr. Elmer). The ALJ's reasons for rejecting Stevenson's opinions were not specific and legitimate and were not supported by the record. As a result, the ALJ's rejection of Dr. Stevenson's opinion because it conflicted with the opinions of

1  nonexamining physicians was legal error.

2       **2.   Eric Mueller, M.D.**

3       The ALJ gave little weight to the November 24, 2010, opinion of

4  Eric C. Mueller, M.D., one of Plaintiff's treating rheumatologists,

5  who opined Plaintiff could not maintain sedentary work.   Tr. 46;

6  865-71.   The ALJ rejected this opinion on the basis that certain

7  treatment notes "show relatively normal physical examinations with

8  no evidence of loss of grip strength, loss of range of motion, no

9  swelling, and loss of sensation."   Tr. 46.   As stated above, the

10  "hallmark" of fibromyalgia is "a lack of objective evidence."

11  *Moore*, 405 F.3d at 1211; *Rogers*, 405 F.3d at 243.   A longitudinal

12  review of Plaintiff's treating records reveal her symptoms, such as

13  inflammation in certain areas, wax and wane.   *See, e.g.*, Tr. 809-36.

14  In this case, the ALJ's reliance upon isolated treatment notes does

15  not constitute a "specific and legitimate" reason to justify

16  rejecting Dr. Mueller's opinion.

17       Additionally, similar to the analysis of Dr. Stevenson's

18  opinion, the ALJ speculated Dr. Mueller's opinion was the result of

19  pressure from Plaintiff, or was simply based on sympathy instead of

20  objective medical evidence:

21       The possibility always exists that a doctor may express an
         opinion in an effort to assist a patient with whom he or
22       she sympathizes for one reason or another.   Another
         reality which should be mentioned is patients can be quite
23       insistent and demanding in seeking supportive notes or
         reports from their physicians, who might provide such a
24       note in order to satisfy their patient's requests and
         avoid unnecessary doctor/patient tension.
25

26  Tr. 46.   As noted above, the ALJ's unfounded speculation that a

27  treating physician would lie or exaggerate to assist a patient,

28  without evidence of actual impropriety, is an impermissible

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22

assumption in determining Social Security disability cases. See *Lester*, 81 F.3d at 832; *Ratto*, 839 F. Supp. at 1426; *Nguyen,* 100 F.3d at 1465; *Saelee*, 94 F.3d at 523; *Reddick* 157 F.3d at 725-26.

**3.   James Elmer, M.D.**

James B. Elmer, M.D., a specialist in pulmonary, critical care, and sleep disorders, began treating Plaintiff in July, 2005. Tr. 872. In a statement dated December 15, 2010, Dr. Elmer opined that Plaintiff is unable to sustain gainful employment because, despite her compliance with treatment, she suffers from overwhelming sleepiness. Tr. 872. The ALJ gave little weight to this opinion on the basis that it was inconsistent with both Dr. Elmer's October 28, 2010, treatment note that indicated Plaintiff's idiopathic hypersomnia was under reasonable control with medication, and with a treatment note from Deborah Smith ARNP, indicating Plaintiff presented like her "old self." Tr. 46.

Dr. Elmer's October 28, 2010, treatment notation was abbreviated and stated in full: "idiopathic hypersomnia reasonable control as long as she takes stimulant medications this is not a cure." Tr. 863. By contrast, Dr. Elmer's December 15, 2010, statement provided detailed opinions specifically addressing Plaintiff's mental abilities, and he opined Plaintiff would be unable to concentrate for more than a few minutes, even when under the effects of stimulant medication. Tr. 874. Additionally, Dr. Elmer stated that Plaintiff cannot "stay awake or focus her attention long enough to meet the standards that this level of [full-time] work would require." Tr. 875. The December statement provides a specific description of Plaintiff's limitations while experiencing "reasonable control" of her sleep disorder. These

statements are not inconsistent. Instead, the December 15, 2010, statement provides an explanation of the abbreviated chart note from October 28, 2010.

The treatment note by Deborah Smith, ARNP dated July 30, 2010, was a result of the mental status exam and stated, "So much more like old self. Laughs easily, energetic, good sense of humor, dwells on [positive] rather than negative." Tr. 848. First, this treatment note is immaterial to whether Plaintiff's sleeping disorder causes her specific limitations that preclude sustained employment. Additionally, Nurse Smith later explained that she treated Plaintiff four times in 2010, and that a single observation is not indicative of the bigger picture of Plaintiff's overall wellness:

> My observations reflect small windows in her life, rather than sequential or sustained intensive care. As a general impression, over time, her pain seems to have increased, her mood reflects dysthymia, and her activity level seems increasingly affected by her pain. There have been rare times when I have glimpsed parts the [sic] Cindy I knew in 1988, but they have never been sustained over any longer period than one visit.

Tr. 541. In this case, a single treatment note from Plaintiff's internist's nurse that indicates Plaintiff's mood seems improved is not a "specific and legitimate" reason to reject the opinion of Plaintiff's treating sleep-disorder physician. The ALJ erred by rejecting the opinion of Dr. Elmer.

**4.    Craig Lammers, Ph.D.**

The ALJ gave "partial credit" to the opinions provided by Craig A. Lammers, Ph.D., in October 2008 and October 2009. Tr. 45; 689-

96; 775-77.[6]   The ALJ explained that in a 2009 Psychiatric Review Technique form, Dr. Lammers opined that Plaintiff had marked limitations in activities of daily living and concentration, persistence and pace, but those limitations were not supported by the 2008 assessment or by 2009 treatment records.   Tr. 45-46.   The ALJ neither cited treatment records from 2009 that contradicted Dr. Lammers' opinion, nor did the ALJ cite to specific contradictory opinions from the 2008 assessment.   An ALJ may reject a treating physician's opinion if it is conclusory and/or conflicts with an examining physician's opinion, so long as the ALJ supports the rejection with specific, legitimate reasons based on substantial evidence.   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In this case, the ALJ fails to specify contradictory medical evidence.   Moreover, Dr. Lammers' 2008 assessment took place one year prior to the 2009 examination, and Plaintiff's mental impairment could have changed over time.   Additionally, Dr. Lammers' 2008 evaluation indicated Plaintiff was "experiencing some significant physical pain and discomfort accompanied by a rather

_____

[6]The ALJ asserted that it was "important to point out the claimant had a previous treating relationship with Dr. Lammers in 1995."   Tr 45. To the extent this comment infers Dr. Lammers is biased because of sympathy for a former patient and, thus, cannot be trusted to provide an objective medical opinion, this reason, as analyzed elsewhere herein, is an impermissible reason upon which to discount an examining physician's opinion.   See, *Lester*, 81 F.3d at 832; *Nguyen,* 100 F.3d at 1465; *Reddick* 157 F.3d at 725-26.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 25

chronic level of moderate depression." Tr. 695. Dr. Lammers also added, "these emotional factors appear to have somewhat correlated with the increasing level of pain and discomfort. There was no indication of malingering during my contact with her." Tr. 695. Additionally, Dr. Lammers noted that Plaintiff's test results indicating a high level of mental functioning are likely not indicative of how Plaintiff would perform in an eight-hour workday:

> It is very possible that on a day-to-day basis, due to her depression and ongoing physical concerns, that she would not be able to sustain this type of effort for a prolonged period of time (such as an eight hour work day). . . .
>
> . . .
>
> . . . She does display some ability to concentrate and persist at a task at hand, but she most likely would be unable to do this over a prolonged period of time due to her pain, fatigue and depression. While she is able to read for approximately 1 hour at a time, this is surely less demanding of her than would be required in a typical work like setting that might involve both physical demands as well as ongoing cognitive/mental demands.

Tr. 695-96. In short, Dr. Lammers' 2008 assessment does not contradict his 2010 assessment indicating Plaintiff had marked impairments. The ALJ's reason for giving little weight to Dr. Lammers is not specific, legitimate and supported by the record.

**5.   Robert S. Djergaian, M.D.**

On November 10, 2008, Robert S. Djergaian, M.D., conducted an independent medical exam of Plaintiff at the request of her life insurance company. Tr. 728-38. Dr. Djergaian asserted that the medical evidence was consistent with and supportive of Plaintiff's claimed symptoms. Tr. 733. He found no evidence of symptom exaggeration or malingering, and he opined that the diagnoses accurately reflect Plaintiff's condition. Tr. 733. Dr. Djergaian also opined that Plaintiff's condition leaves her unable to work,

secondary to "persistent, consistent pain, difficulty maintaining positions for any length of time, and inability to remain active without ongoing pain, along with chronic fatigue." Tr. 734. Dr. Djergaian also opined that he believed Plaintiff could not return to her former job, and likely could not sustain any employment, "With her limitations and symptoms, I think it would be difficult for her to be competitively employed in another occupation without quite significant accommodations and being in a job that allowed her to work part time based on waxing and waning of symptoms." Tr. 734. Dr. Djergaian commented that even if Plaintiff participated in a rehabilitation plan, she likely would not be able to return to function well enough to return to work. Tr. 735.

Without explicitly explaining the weight the ALJ gave Dr. Djergaian's opinion, it appears the ALJ rejected the opinion:

> Dr. [Djergaian] is a one-time examiner whose opinion clearly shows he does not understand the meaning of disability under the Social Security Rules and Regulations. Although an individual may not be able to perform his past relevant work, that does not mean such an individual is unable to perform other work. Dr. [Djergaian]'s statements cannot be considered a medical source statement based on what Dr. Djergaian believes the claimant's limitations to be.

Tr. 44. Additionally, the ALJ noted that Dr. Djergaian's opinion that Plaintiff was precluded from competitive work was "based on the claimant's self-report. . . . [T]here were very few objective findings." Tr. 44.

In considering the weight to give to a medical opinion, the ALJ may consider "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has...." 20 C.F.R. § 416.927(c)(6). In this case, Dr. Djergaian conducted an independent medical exam on behalf of an insurance

company, and it is not clear to what extent Dr. Djergaian was familiar with the social security disability regulations and evidentiary requirements. However, the ALJ illustrates her misunderstanding of the nature of fibromyalgia by rejecting Dr. Djergaian's opinion because it is based primarily upon Plaintiff's self-reports. As stated earlier, fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is, therefore, "a lack of objective evidence." *Moore,* 405 F.3d at 1211; *Benecke,* 379 F.3d at 594. To the extent the ALJ rejected Dr. Djergaian's opinion because it was based on Plaintiff's self-reports, the ALJ failed to provide specific, legitimate reasons supported by the record and, thus, the ALJ erred.

**D.   Remedy**

When the ALJ's decision is not supported by substantial evidence in the record or is the result of legal error, whether to remand the matter for additional proceedings or whether to order an immediate payment of benefits is within the court's discretion. *Benecke*, 379 F.3d at 590. Evidence should be credited as true and an action remanded for an award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) no outstanding issues remain that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *Id*. at 593; *Harman*, 211 F.3d at 1178. It is an abuse of discretion to remand for further proceedings where, as in this matter, no further proceedings are necessary to make a disability determination and it

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 28

is clear from the record that the claimant is entitled to benefits. See *Benecke*, 379 F.3d at 596.

After applying the credit-as-true rule to Plaintiff's improperly discredited hearing testimony and Plaintiff's treating and examining physicians' opinions regarding Plaintiff's functional limitations, no outstanding issues remain to be resolved before determining that Plaintiff is entitled to benefits. The ALJ added facts mirroring the discredited testimony and opinions to the hypothetical posed to the vocational expert ("VE") when evaluating RFC. The VE responded that such a person would not be able to work. Tr. 172-73. Because it is clear the ALJ would be required to find Plaintiff disabled, the court concludes that Plaintiff is entitled to an immediate award of benefits.

## CONCLUSION

In the present case, the record is extensive and well developed. It consists of 878 pages and includes the medical records of the several doctors who have examined or treated Plaintiff. Substantial evidence in that record indicates that Plaintiff is disabled and entitled to receive benefits without further extended delay. Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. The decision is therefore **REVERSED** and the case is **REMANDED** for an immediate award of benefits. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for an award of immediate benefits.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 29

1    2.    Defendant's Motion for Summary Judgment, **ECF No. 19**, is

2 **DENIED.**

3    3.    An application for attorney fees may be filed by separate

4 motion.

5    The District Court Executive is directed to file this Order and

6 provide a copy to counsel for Plaintiff and Defendant. Judgment

7 shall be entered for Plaintiff, and the file shall be **CLOSED.**

8    DATED April 30, 2013.

9

10    _____S/ CYNTHIA IMBROGNO_____
      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 30